ELLEN J. HARKER, AMELIA POTTER (widow) and ED-
 WARD R. BROWN children of ISAAC S. BROWN, de-
 ceased, and EMMA, infant child of WILLIAM BROWN,
 deceased, son of ISAAC S. BROWN, deceased,

*vs.*

PATRICK REILLY.

*New Castle, Feb. T. 1871.*

A *feme covert*, owning lands in fee simple, settled them upon certain trusts
 for her lifetime, with the further trust that, after her decease, the trustee
 should " grant and convey the said premises and every part thereof unto
 " such person or persons and for such estate and estates and interest as
 " she the said M. by her last will and testament, or by any writing &c.,
 " should order, direct, limit and appoint." The settlor afterwards, by an
 instrument executed as a will, directed the trustee to convey the premises
 to R. his heirs and assigns, in trust to sell and convey the premises and
 dispose of the proceeds for certain specified purposes. A specific sum

being part of the proceeds, was to be paid to B. who had died prior to the date of the will. *Held :*—

1. That both the limitation in trust and the directions for a sale were warranted by the power.

2. That the portion of the fund bequeathed to B., and which by reason of his death was ineffectually disposed of, passed to the heirs at law of M. by way of resulting trust to her as the grantor in the deed.

Where there is a *qualified* conversion by will, if one of the legacies fail, it matters not whether it be void *ab origine* or lapse, that portion of the fund which fails of its object does not pass with the residue, but results to the party who would have been entitled to the real estate unsold.

Under a qualified conversion the heir takes what is ineffectually disposed of, whether the claim be against the administrator, next of kin or residuary legatee.

The power to direct a conveyance for "any estate and estates and interest" warrants a direction for the conveyance of the legal estate, either absolutely or subject to any trusts, conditions or limitations whatsoever.

The power *to appoint estates in land* authorizes a direction for the sale of it and a distribution of the proceeds.

Where, by reason of an ineffectual disposition under a power, a legacy results to the heir at law, it will be subject to abatement as if the original disposition had been effectual. Though the heir takes by a different title, he nevertheless takes precisely what the deceased legatee would have taken if living.

The case of *Ferguson's lessee vs. Hedges, 1 Harring.* 524, examined and criticised.

BILL IN EQUITY.—This case arose upon the following facts :—Lydia Ann Brown, by deed dated December 30, 1858, conveyed unto Hugh Cox certain real estate, upon certain trusts for her lifetime, with this further trust, that after her decease the trustee should, " grant and " convey the said premises and every part thereof unto " such person or persons and for such estate and estates " and interest as she the said Lydia Ann Brown by her " last will and testament, or by any writing in the nature " of a last will and testament shall order, direct, limit and " appoint."

Afterwards, on the 31st of July, 1867, Lydia Ann Brown,

then Lydia Ann McKegney, by an instrument, executed as a will, reciting the deed and the power of appointment reserved in it, and purporting to be in execution of it, directed the trustee under her settlement to convey the premises at her decease to the Reverend Patrick Reilly, his heirs and assigns, in trust to sell and convey the premises and dispose of the proceeds for certain specified purposes, viz : first to her debts and funeral expenses, and of the surplus there was to be paid to Enos R. Barr $3000, to Mary Ann Callin $400, to Margaret Dunn $300, to Emma Cox $200, to Emma R. Harker $300, and the residue was for Reilly's use.   Mrs. McKegney died in August, 1867. The will was proved and administration taken by Reilly and by deed dated Sept. 9, 1867, Cox conveyed to Reilly, · in trust, subject to the will.

The premises were subject to a mortgage of $1500 to Wm. Brown who died, and the mortgage was assigned to Ellen J. Harker.  *A scire facias* was issued upon the mortgage and the premises were sold under a *levari facias* for $7200.   The surplus being $5657.35, was paid over to Reilly as administrator.   Enos R. Barr died Nov. 11, 1866, in the testatrix' lifetime.  The complainants, as heirs at law of Mrs. McKegney, claimed to be entitled to the $3000 bequeathed to Barr.

The answer did not dispute the facts as above stated but claimed that if Barr died, as charged, in the lifetime of Mrs. McKegney, the devise to him was void and passed to the defendant ; that at all events the balance in his hands after his disbursements, being $4200.23, was subject to commissions and counsel fees.

*G. B. & J. H. Rodney*, for the complainants.

*First.*  As to the character of the fund.   Treating it, in the first instance, as under the will without reference to the power or trust, the surplus was still real estate.

When property is devised to be sold, if the proceeds are unapplied to the purposes of the sale, or so far as unapplied, it retains its original character. The interposition of a trustee excludes general conversion. *King vs. Denison*, 1 *Ves. & B.* 272. The distinction is between an absolute conversion, giving to real estate the quality of personalty *for all purposes,* or only to serve the *particular purpose named. Cruise vs. Barley, 3 P. Wms.* 22 ; *Ackroyd vs. Smithson*, 1 *Bro. C. C.* 503 ; *Leigh & Dalzell on Conv.* 92, 103 ; *Hill vs. Cock*, 1 *Ves. & B.* 174.

This will is a distribution or appointment of a specific fund. Reilly takes, not as under a general residuary clause, but only that part which is ascertained by deducting the other sums. Under the settled principles governing conversion, the land is treated as personalty only for the specific purposes, and, if any fail, the produce goes to the heir. *Johnson vs. Woods*, 2 *Beav.* 409 ; *Smith vs. Saunders*, 2 *W. Blacks.* 736 ; 1 *Farm. on Wills*, 516.

Even if it were treated as a general residuary clause, yet if land retains its original character as to purposes failing, it goes to the heir at law. *Gravenor vs. Hallum, Amb.* 644 ; *Cooke vs. Stationers' Co. 3 Myl. & K.* 262 ; *Jones vs. Mitchel et al.,* 1 *Sim. & Stu.* 290 ; *Gibbs vs. Rumsey*, 2 *Ves. & Bea.* 296 ; *Van Kleeck vs. Ref. Dutch church*, 6 *Paige* 600 ; *Hutcheson vs. Hammond* ; 3 *Bro. C. C.* 128 ; 1 *Farm. on Wills* 503 ; 4. *Kent Com.* 542. The case of *Ferguson's lessee vs. Hedges*, 1 *Harring.* 524, proceeds upon the distinction between lapsed and void devises, and is not sustained by the authorities upon which it is based.

*Secondly.* Treating it as the execution of a power, the deed was the whole source of power and no estate not authorized by it could be created. It authorized only the appointment of legal estates ; the grantee alone was contemplated as a trustee and no further superadded trustee was contemplated, much less a trust to

sell.    The direction, in default of appointment, to convey to Mrs. McKegney's heirs put the title in them subject only to the right of disposal in the mode proposed. The execution of the power therefore is void and the estate vests in them, not under Mrs. McKegney, but under the deed to Cox, as the heirs at law.

A bad appointment is a nullity as to the whole or a part, and the property passes according to the original deed.    2 *Sugden on Powers*, (*16 Law Lib.*) 228.

*V. du Pont*, for the defendant.

This seems to be a general conversion.    But conceding it to pass as realty, it is still a void devise, and as such passes to the residuary devisee.    This is fully settled in this State.    *Ferguson's lessee vs. Hedges*, 1 *Harring.* 524.

The grantor had no other property ; it was an attempt to dispose of her whole estate, and the residue is as in an ordinary case.

There is no defect in the execution of the power.    The words used, "to such persons," and "for such estates" and "interests," are ample to cover any and every sort of "appointment."

We must therefore conclude,—

1. That, if the fund is treated as personalty, Reilly takes unquestionably as residuary legatee.

2. Even if it be *realty*, under the decision in *Ferguson's lessee vs. Hedges* he is equally entitled.

We claim that Reilly is entitled to commissions because the money came to his hands as administrator.

Again, there is a deficiency of assets to pay the legacies in full.    If the heirs take, it must be subject to abatement, as Barr would have taken if living.

THE CHANCELLOR :—

The first question arising in this case is whether the will of Lydia A. McKegney touching the lot, the proceeds of which are the subject of controversy, was a valid execution of the power reserved to her under the deed of Dec. 30th, 1858. It is objected that this disposal of the lot is unwarranted by the power in two particulars — 1st, in creating a *trust*, whereas the power was to appoint *the legal estate*, and 2nd, in directing *a sale of the premises*, whereas the power was to appoint *an estate in the land.* I am of opinion, however, that in both of these particulars the will is quite within the scope of the power conferred.

In the first place it is to be presumed that a power given to dispose of property *by will* is intended to be exercised according to the nature of that kind of instrument, and includes *ex vi termini* any and all modes of disposal which a will is competent to make, except so far as the power of appointing by will is qualified or restricted in the instrument creating it. When therefore the question arises, as here, whether a power to appoint land by will, may be executed by directing a conveyance of the legal estate, not absolutely, but subject to a new trust, or by directing a conversion of the land and a distribution of the proceeds among the appointees instead of the conveyance of it to them,—inasmuch as these are such modes of disposal as may be 'made by will,'—we must look into the original instrument, to see whether the power reserved to Mrs. Brown to dispose of these premises by will, is qualified in these particulars, either by the terms in which it was created or by implication from those terms. We turn then to that clause of the deed which reserves this power. It directs that, after Mrs. Brown's decease, the trustee shall convey the said premises to " such person or person, and "for such estate and estates and interest" as she the said Lydia Ann Brown should by her last will and testament &c. " order, direct, limit, and appoint." These words point

to no special class of objects to be benefited, but any person may be appointed to take ; they point to no particular sort of estates to be raised in the person taken, it is to be " such estate and estates and interests" without any qualification, legal or equitable, as the donee shall limit ; again, there is no indication of any purpose to preserve the premises *in specie*, excluding the direction of a sale and distribution of the proceeds as one of the general powers of disposal by will. The terms of the deed are evidently meant to be and are simply declarative of a full and unqualified testamentary power and not, in any particular, restrictive of it. This general view would seem sufficient, to sustain the will as a valid execution of the power ; but we may now examine more particularly the points of objection. The first is, that the power was to operate upon the legal estate held by Fox, to be executed by the conveyance of the legal estate simply, and is without authority to superadd to it a further trust. This, however, is a question of intent whether it was within the contemplated scope of the power that Mrs. Brown might direct a conveyance by Fox of the legal estate with further trusts raised upon it. The very general terms used,—that the conveyance by Fox should be "for such estate and estates and interests" as she should limit,—would include either a conveyance of the legal estate absolutely, or of the legal estate subject to any uses, trusts, conditions or limitation whatever. Sugden in his treatise on Powers, Vol. 1. page 514, speaks of this phrase, estate or estates, "as comprehending the whole interest in lands and as being sufficient, even when used in the creation of a power, to authorize the limitation of a rent charge, that being, as he says, " clearly a portion of the entire interest in the land." It was so held *Thwaytes vs. Dye*, 2 *Vern*. 80, and affirmed in the House of Lords. The only doubt ever entertained was whether such an execution was good at law, as well as in equity, and, even this doubt, Sugden considers as having been removed.

We must then conclude that the power under consideration, to direct a conveyance for any "estate and estates and interest" warrants a direction for the conveyance of the legal estate, either absolutely or subject to any trusts, conditions or limitations whatsoever.

The other objection was that the power reserved, being *to appoint estates in the land*, did not authorize a direction for the sale of it and a distribution of the proceeds. But the contrary of this has been fully settled by authority.

First is the early case of *Roberts vs. Dixwell*, 2 *Eq. Cas. Abr.* 668. The question was whether a father, having a power "to *appoint and divide*" an estate among younger children, could exercise the power by charging on the estate a gross sum in favor of the only younger child. Lord Hardwicke treats it as unquestionable and admitted in the case, that " the father *might have appointed part of the estate to be sold and the money raised by such sale*, and hence concludes that he might raise the money as well by a charge. This case is a high authority for the principle that a power to appoint the land may be executed otherwise than by limiting the lands itself to the appointees, with Lord Hardwicke's opinion that such a power might be executed by a conversion and distribution of proceeds.

Next is *Long vs. Long*, 5 *Ves.* 445, in which Lord Loughborough decided that a power to sell an estate need not be expressly given ; and he went so far as to raise such a power, by implication, from a power given to charge the estate in the hands of the eldest son for the benefit of younger children. That was a stronger case against the sale than the present one ; for it was argued with much force that the estate was intended to remain in the eldest son subject to the charge. But it was held, that, as the father might have charged the estate to its full value, he had done only what was equivalent to that. That seems to be going a great way.

In *Kenworthy vs. Bate*, 6 *Ves.* 792, the direct question now before us was presented. There, as here, the power was to. appoint real estate by will, but more qualified' in this respect, that the appointment was restricted to a class, viz : the children of the appointor, whereas, in the case before us, the power is unlimited. The execution of the power was by a devise to trustees to sell and distribute the proceeds among the children.

The point was very fully examined and all the cases reviewed, both in the argument of counsel and in the opinion of Sir William Grant.

The decision was that "a power to give includes a "power to sell, for the purpose of giving the money instead "of the land," and the devise in trust to sell was held a valid execution of the power to appoint the land. The great principle of all the cases is, that in construing powers, the Court looks to the end and design of the parties and the substantial, rather than the literal execution of them. 5 *Ves.* 445. In *Sumner & Perkins' Ed'n. of Ves. Jr. 6th Vol.* 448 *note (B).* there are cited, from *Sugden on Powers* (*4th Edition*), some objections to the decision in *Long vs. Long*, as to the unlimited power to charge to any value, but in the *6th Edition, p.* 553, (15 *Law Lib.,*) these objections are retracted by Sugden and he expresses his entire acquiescence in *Long vs. Long* on that point. 4 *Kent Com.* 344-5.

Taking then the will of Mrs. McKegney to be a valid execution of the power, we proceed to the question raised under the will, that is, what becomes of that portion of the proceeds of sale bequeathed to Mr. Enos R. Barr, that bequest being void in consequence of Barr's decease prior to the date of the will. Does this legacy sink into the residue of the fund for the benefit of Mr. Reilly, or does it pass to Mrs. McKegney's next of kin as undisposed of personalty, or does it result to her heir at law, the power to that extent being treated as unexecuted ?

Opinion:—the effect of a qualified conversion.

It is clear that even if this portion of the fund does not pass under the residuary clause, the next of kin of Mrs. McKegney can take nothing : for in no event can the proceeds of sale be treated as her personal estate so as to pass under the statute of distribution.   Either they must pass under the will as an execution of the power *i. e.* to the residuary legatee of the fund to be raised, or result to those who would take the land if the power be defectively executed.   Whether the fund takes the one of these courses or the other, is to be determined by the well settled rule as to the effect of a qualified conversion of real estate, viz : that where there is a *qualified* conversion by will, *i. e.* a conversion directed for some particular purposes, and after certain bequests made out of the proceeds, the residue is given over, say to A, if one of the legacies fail—it matters not whether it be void *ab origine* or lapse—that portion of the fund which fails of its object does not pass with the residue, but results to the party who would have been entitled to the real estate if unsold.   In the case of an ordinary will the money results to the heir of the testator.

In the case of a will made in execution of a power, it results to the party entitled to take the land under the instrument creating the power in default of a due execution of the power.   In this case the parties so entitled are the heirs at law of Mrs. McKegney, by way of resulting trust to her, as the grantor in the deed, there being no express limitation over in default of the execution of the power. The ground of the rule is, that, this being a distribution of a specific fund among several objects, what is given as a residue in terms is construed as a gift of such sum only as shall remain after deducting the amounts before given ; as, if out of the proceeds of real estate directed to be sold, one thousand dollars were bequeathed to A. and the residue to B. the gift to B. is only of so much of the purchase money as remains after deducting $1000. B. taking

11—DEL. CH. IV.

in no event any interest in the $1000. The term "residue"
is used not in the general testamentary sense, as compre-
hending all of a testator's estate left in fact undisposed of,
whatever that might chance to turn out, but as descriptive
merely of the as yet unascertained balance of the proceeds
of sale, which balance becomes, when the sale is completed,
an ascertained amount and a specific gift, of that amount.
Then as, in such case, the particular object of the gift fail-
ing and the residuary legatee of the fund not taking the
sum undisposed of, it falls within the principle applicable
to qualified conversions of real estate or conversions made
for some particular purpose, that, if the purpose of the con-
version fail, either in whole or in part, through ineffectual
disposal of the proceeds to the objects intended, the money,
so far as it may be undisposed of, results to the party who
would have been entitled to the land. See at large, *Jar-
man on Wills*, 570 &c.; *Leigh & Dalzell on Conversion*,
(5 *Law Lib.*) 92 &c. 103 &c; 1 *White & Tud. Lead. Cas.
in Eq.* 576 &c.

The rule as thus stated has been applied in a great
variety of cases : and it does not seem to matter through
what cause the attempted disposal of part of the fund failed,
whether from the testator's failure to designate an object
to take a portion of the fund, or from the gift being illegal
or void, or whether from lapse.    This rule in the breadth of
its application in favor of the heir is most fully stated and
illustrated in *Leigh & Dalzell on Conversion* (5 *Law Lib.*)
*p.p.* (93) and (106), a book accepted as the best authority
on this subject.  On p.(93) the general rule is thus stated :—
    " Where a testator means with regard to a particular
" purpose to convert his real estate into personal, if that
" purpose cannot be served, the Court will not infer an in-
" tention to convert the estate for any other purpose not
" expressed, it being a rule in equity, that, where real estate
" is directed to be converted into personal for a purpose
" expressed, which purpose fails, *either wholly or partially,*

"in the former case, though the estate has been converted,
"the whole produce of that conversion will still be consid-
"ered as real estate ; and in the latter *as far as the purpose*
"*fails, so far the money is to be considered realty and not*
"*personalty.*

"Hence, whenever for any specific or general purpose
"contained in a will, land is thereby directed to be con-
"verted into money and the intention of such conversion is
"either wholly or partially disappointed, *whether by silence*
"*or inefficacy of the will or by lapse in the testator's life-time,*
"the consequence will be a resulting trust for the heir at
"law *of so much of the produce as is inapplicable from any*
"*of the preceding causes* to effectuate the testator's purpose;
"for as the reason of the purpose has ceased, the purpose
"itself should be taken to have ceased." The authors then
proceed to consider the rule as applied to the several
caues of failure to effectuate, in whole or in part, the
testator's object in the conversion, among which causes,
the one which concerns the present case is the one treated
of on p. (106) where, after having shown the rule to be ap-
plicable in favor of the heir in the case of a failure of the
testator's purpose, from the silence of the will as who
should take, they say ;—"It must be equally clear, that,
"where the particular purpose fails *from inefficacy,* the re-
"siduary legatee will not be entitled to it, but this surplus
"must also result to the heir at law.   As where a testator
"devised lands to be sold and part of the money arising
"by the sale to go to a charitable purpose and the resi-
"due of the money was given over, it appearing that the
"devise to the charity was void the produce to be applied
"to it was not considered as forming part of the residuary
"estate, but resulted to the heir." Again, on p. (103,) the
authors more distinctly state the doctrine of a resulting
trust in favor of the heir, under a qualified conversion, as
being wholly unaffected by the consideration that the
claim against him is by a residuary legatee. After stating

the general rule, they add, "Nor if there be a residuary "disposition will this surplus arising from the conversion " of the testator's real estate after the particular purposes "are answered so form a part of the personal estate as " to pass by the residuary clause ;—for as a conversion " by will cannot take effect till after the death of the " testator, properly speaking nothing is his personal estate " which was not so at his death ; and, although he cer-"tainly may express himself in such a manner as to " shew that he intends this surplus to fall into the resi-"due, yet unless he has done so, where there is a direc-"tion to sell land with an application of the money to a " particular purpose and subsequent disposition of the rest "and residue of the personal estate, it appears there is no "case, in which it has been held that the surplus, after the "particular purpose is answered, forms part of the personal " estate so as to pass by the residuary clause."

The doctrine, thus stated, is fully supported and illustrated by the course of decisions upon the effect of qualified conversions.

The first case in which the doctrine came to be very fully discussed and considered was in 1790, *Hutcheson vs. Hammond*, 3 *Bro. C. C.* 128-148. Under a will made by a *feme covert*, in execution of a power, lands were devised to be sold and the proceeds invested for her husband dur-ing his life, and after certain sums were to be paid out of the principal, including £1000 to one Grace Parker, then in trust to pay all the residue of said principal money " together with the interest, or dividends, which might be " due thereon," unto, &c. Grace Parker dying in the life-time of the testatrix, and the legacy of £1000 to her out of the proceeds having lapsed, it was held, first, by Mr. Justice Buller sitting for Lord Thurlow, and, afterwards, on a rehearing by the Lord Chancellor himself, that the lapsed sum descended, as lands, to the heir. The doctrine thus established was never considered as confined to the

case of a lapsed legacy ; but has been extended to all
cases in which the purpose of a conversion of lands, di-
rected by will, fails.   In the first case, following *Hutche-
son vs. Hammond*, Lord Loughborough applied the same
rule where a testator, disposing of the proceeds of lands,
directed to be sold, gave to his executor £1000, "to be
" disposed of according to any intentions he might leave
" in writing", and died without leaving any instructions,
whereby the gift became void.  *Collins vs. Wakeman*, 2
*Ves. Jr.* 683.

In several cases the rule was applied to bequests
made to charitable uses, void under the statutes of mort-
main.

An early case of this class was *Gravenor vs. Hallum*,
*Ambler* 643, in 1767, before Lord Camden, where, under a
devise of lands to be sold, part of the money arising by
sale was bequeathed to charitable uses, and the residue of
the money to be raised was given over.   It was held, that,
the gift to charitable uses being void, that portion of the
money should result to the heir and not pass to the resi-
duary legatees.  In a similar case before Sir William Grant,
*Gibbs vs. Rumsey*, 2 *V. & B.* 293, in 1813, he treated the
point as too clear for any discussion.

A still later case of this class was *Jones vs. Mitchell*,
1 *Sim. & Stu.* 290, in 1823, where lands were devised to
be sold and, out of the proceeds, certain legacies to be
paid, including £800, for certain charities, "and all the
" rest, residue and remainder of the monies to arise from
" the sale of the real estate unto I. R. for his own use
" and benefit."  This was a case of a void bequest as to
the £800, and is closely analagous to the present one.

Sir John Leach thus states and applies the rule ;—
" The will, as to personal estate. speaks at the time of the
" death of the testator and the residuary legatee takes,
" not only what is undisposed of by the expressions of
" the will, but that which becomes undisposed of by dis-

"appointment of the intentions of the will. It is other-
"wise as to the residuary devisee of real estate. As to
"him, the will speaks only at the time of making it, and he
"can take nothing but what is at that time intended for
"him. The devisor at the time of making the will in-
"tended that the residuary devisee of the piece of land
"should take *such residue subject to the deduction of the*
"*£800 and not the £800* which is therefore undisposed of
"and results to the heir."

The case of *Tregonwell vs. Sydenham*, 3 *Dow's P. C.*
194, in the House of Lords, applied the established doctrine,
of a resulting trust in favor of the heir at law against a
residuary devisee, to the case of a void disposal, in part,
of the produce of real estate. That was the case of a por-
tion carved out of a trust term for purposes which were
void in law. The House of Lords held, the opinions
being delivered by Lord Redesdale and Lord Eldon, that
the portion ineffectually disposed of did not go to the de-
visee of the residue of the estate, but was to be raised for
the benefit of the heir as an interest in real estate result-
ing to him by the failure of the specific devise thereof.

The latest English case on this point is *Amphlett, vs.
Parke*, 2 *Russ. & M.* 221, in which legacies given of the
produce of real estate had *lapsed*. Lord Brougham, upon
a most elaborate examination of the whole subject, held
the doctrine of a resulting trust very strongly in favor of
the heir at law against a residuary legatee. That decision
was in 1831 and was the last decision of this series prior
to the passage of the Act of 1 Vict. which disposed of
the whole subject by providing that in all cases, where a
contrary intent does not appear lapsed, or void legacies
shall pass to the residuary legatee.

There is a case, which perhaps should receive notice
here, cited in 1 *Jarman on Wills* 575, as having diverged
from this course of decisions we have been reviewing. It

is *Noel vs. Lord Henley*, a case in the Exchequer Equity, *7 Price* 240 : 1 *Daniell* 24, 322, also said to have gone to the House of Lords, but I cannot find any report of it on appeal. On examination of this case, however, as it is reported in the Exchequer, it will be found to have been decided upon a principle not at all involved in the present investigation.

The case was this ;—A testator had directed the produce of certain real estate, devised in trust for sale, to be applied by the trustees for the payment of certain debts, and also to pay out of the proceeds £5000 to his widow, in part satisfaction of £10,000, which had been secured to her by marriage settlement. There was also a small legacy beside to be paid out of the produce. The residue of the produce was directed to be invested for the benefit of two families. The widow died in the testator's lifetime, whereby the legacy to her lapsed. The Court held that the £5000 bequeathed to the widow did not result to the heir but that the legatees over took the whole fund discharged of this legacy, as also of such debts as the personal estate was adequate to pay. The Court proceeded upon the distinction, quite well defined, between a devise of distinct portions of a fund to different persons, with a residue or surplus over, and a devise of the whole to one, charged with the payment of debts or legacies, in which latter case, if the charge fails, the effect is simply to discharge the estate or fund devised and the whole passes as though no charge had been originally created. The case was expressly put upon that ground, and it does not appear to me to be a departure from the principle of the cases before reviewed, upon the doctrine of resulting trusts, although, in Jarman, it is so treated and on that account made the subject of severe criticism.

On a question of this nature, in the absence of any statute of our own, the proper and safest guide for our courts is the settled course of decision in England prior

to the Statute of Victoria, and I therefore accept, as the rule of this case, the English doctrine of qualified conversion, which carries to the heir at law and not to the residuary legatee the proceeds of real estate converted for particular purposes or bequests, which fail to be effectuated, whether the bequest lapse by the death of the legatee or be-void *ab origine*, no contrary intention appearing by the will. This doctrine of qualified conversion and of resulting trusts to the heir at law is held by the American cases at large which are collected in the American note to *Ackroyd vs. Smithson*, 1 *Wh. & Tud. L. Cas. in Eq.* 590.

Our case is free from one question which embarrassed some of the cases before cited and which, in fact, was the question chiefly discussed in most of them ; that was, what expressions in a will are sufficient, so to blend the proceeds of real estate with the general personal estate, as to effect a conversion out and out, subjecting the mixed fund to the rules applicable to personal estate, and so carrying all that undisposed of, under the residuary clause, to the exclusion of the heir. In some of this series of cases there were strong circumstances indicative of such an intent, particularly in *Collins vs. Wakeman, Gibbs vs. Rumsey*, and *Amphlett vs. Parke* ; yet the result of these, and of the cases at large touching the rights of the heir in the proceeds of real estate, not effectually disposed of, is, that not even a direction in the will that the proceeds shall be deemed part of the personal, nor their being in terms blended with the personal estate, if they still remain distinguishable, shall take from the heir any portion of the proceeds, ineffectually bequeathed in favor of the residuary legatee, or of the next of kin (when the question is between them and the heir), but, to have this effect, the proceeds must expressly or by necessary implication be made personal estate to all intents and purposes.

The principle on which the whole doctrine rests is that expressed in *Amphlett vs. Parke,* "that the heir must " be effectually displaced, that he is not to be displaced " by inference or implication, but there must appear a " clear, substantial and undeniable intent on the part of " the devisor or testator to exclude him."

We see then how far within the limit of adjudged cases, in favor of the heir at law, the present case stnads. For under this will there is no blending of the land with any personal estate of the testatrix ; nor could there be, for, this being the will of a married woman, it operates only as an execution of the power and can pass only the land or its proceeds, nothing else—nothing whatever as the estate of the testatrix. Hence as we may observe by reading the paper in question the proceeds of sale are disposed of in terms as purchase money ; "the purchase " money to be received by the said Patrick Reilly and to " be applied by him, &c." What is spoken of as the residuary clause is not a disposal of any residue of personal estate of the testatrix, but merely a gift of the surplus of the purchase money, as such, after deducting the legacies of ascertained amounts. The words are, "and what "remains of the said purchase money after the foregoing "payments, &c., is to be retained by the said Patrick "Reilly." It would be difficult to put a clearer case of qualified conversion. It is precisely like *Hutcheson vs. Hammond,* cited from 3d Brown, which was the case of a will made in the execution of a power, directing the lands to be sold by trustees, and the proceeds applied, first, to sundry legacies, "then in trust to pay all the residue of "said principal money, &c." Perhaps no case was ever more thoroughly argued and considered than that case, and the conclusion reached was strongly in favor of the heir.

The chief reliance of the defendant was upon *Ferguson's lessee vs. Hedges,* 1 *Harring.* 524. There, our Superior Court held that the general residuary clause of a will

12—DEL. CH. IV.

might carry lands of which the will contained a void devise, in that case, one in conflict with the mortmain acts. The principle of the decision was, that the usual residuary clause passes all that is not disposed of by the will as it stands at the making of it, including, as well land ineffectually devised, as land not attempted to be devised, a void devise being in effect no devise at all, and that, with respect to any presumed intent of the testator as to who should take the land, if ineffectually devised, the presumption is no more in favor of the heir than of the residuary devisee.

This decision is contrary to the strong weight of authority, both English and American. 4 *Kent Com.* (542) *note.** Nevertheless, I should feel bound to follow it, in a case to which it might be applicable, because that decision concerns a rule of construction respecting legal estates,—a rule proper to be settled in a court of law, and which ought to be uniform in the two Courts. But I am utterly at a loss to conceive how that decision can be made to rule this case. The cases differ in two clear and essential features. First, the whole extent of *Ferguson's lessee vs. Hedges*, is to determine what shall be the construction of *the general residuary clause* of a will,—that clause which disposes of *all the testator's estate*, not before specially devised or bequeathed—whether such a residuary clause shall or shall not be taken to comprehend, as well real estate ineffectually disposed of in specie, as real estate not attempted to be disposed of. But this case does not bring under consideration a residuary clause *i. e.* a clause disposing of the residue of a testator's general estate. This paper is not a will, in a proper legal sense ; but it is an appointment in execution of a power—an

---

*This subject has been fully considered and authorities collected in *VanKleeck vs. Reformed Dutch Church*, 6 *Paige* 600, affirmed in 20 *Wendell* 457; *Greene vs. Dennis* 6 *Conn.* 292; *Lingan vs. Carroll, 3 Har. & McH.* 333 ; *Tongue vs. Hutwell, 13 Md. 415 ; Hayden vs. Stonghton, 5 Metc. 528.*

appointment by a married woman without testamentary capacity ; and the question before me concerns the effect to be given to the gift of a surplus of the particular fund, distributed, under the power, after the appointment of specific portions of it. Now it has been long and uniformly held, as cases before cited shew, that, in the absence of any manifest contrary intent, the gift of a surplus of a particular fund distributed, even under a will, and, *a fortiori*, under a mere power, is not a residue, in the testamentary sense of that word, such as carries the previously undisposed of estate of a testator, but is only such balance of the fund when realized in money, as remains, after deducting the sums specifically given or appointed. To make this case analagous to *Ferguson's lessee vs. Hedges* it would be necessary that this be a will in the proper sense of that word, and that it should contain over and above the gift of this particular surplus, a general residuary clause which might, upon the principle of *Ferguson's lessee vs. Hedges,* be claimed to carry such portion of the particular fund, as could not be taken by any one under the bequest of that fund, neither by specifie legatees nor by the legatee of the surplus. Bnt it is to be further observed, that, even were there here a general residuary devisee to challenge the right of the heir at law, such residuary devisee would encounter the long settled doctrine of a resulting trust, to the heir at law, of the proceeds of real estate ineffectually disposed of, when the conversion directed is qualified and not absolute, a doctrine not at all involved in *Fergusou's lessee vs. Hedges* and which is the other essential feature of difference between the two cases. In that case there was an attempt to devise the real estate in specie absolutely away from the heir. Here there is not an absolute devise away from the heir, but what is termed a qualified conversion of the land, *i. e.* a direction to sell for particular purposes only, the effect of which, never questioned, is to leave in the heir the land and its proceeds after sale, subject to the particular purposes of the conversion, so

that, if those purposes fail, in whole or in part, the undisposed of portion of the proceeds results to the heir as his right ; a right of inheritance, of which he can be divested only by some effectual disposal of the real estate under the will. For, under the doctrine of a resulting trust of the proceeds of a qualified conversion of real estate, the heir takes, not upon the presumed intent of the testator to give to him, but by his right of inheritance. *Hopkins vs Hopkins, Cas. temp. Talbot* 52 ; *Amphlet vs. Parke,* 2 *Russ. & M.* 221 ; *Tregonwell vs. Sydenham,* 3 *Dow P. C.* 192. Hence, it has been held, that, under this doctrine of resulting trust, even an intention of the testator, apparent in the will, that the heir should not take, is not sufficient to exclude him, but that he can be disinherited only by an actual and effectual disposal of the real estate away from him.

It will be seen then that in cases of qualified conversion such as this is, the question in whose favor the testamentary intent is to be presumed as to the undisposed of proceeds does not arise, as it was held to do in *Ferguson's lessee vs. Hedges,* where there was not a qualified conversion, but an attempted absolute devise in specie.

Now, without here questioning the decision in *Ferguson's lessee vs. Hedges,* as applied to the case then before the Court, it cannot be supposed that that Court, in adopting a rule for the construction of the general residuary clause of a will, intended to overturn the unquestioned rule applicable to the distribution of a particular fund, under a will or power;—or that, in holding the presumption to be in favor of a residuary devise and against the heir, as to land attempted to be absolutely devised away in specie from the heir, the Court meant to overturn the long established doctrine of a resulting trust to the heir under a qualified conversion of real estate. On the contrary the right of the heir, by way of a resulting trust to the undisposed of proceeds of real estate under a qualified

conversion, has been recognized in the same Court in two cases subsequent to *Ferguson's lessee vs. Hedges.* These are the *State for the use of Wiltbank vs. Wiltbank's administrator*, 2 *Harring*. 18, and *State for the use of Derrickson vs. West's adm'r. Ib.* 151. In these cases lands were directed to be sold and the proceeds applied to objects forbidden by the mortmain acts. The lands were sold and the proceeds came to the hands of the administrator. The heir claimed the proceeds as the subject of a resulting trust and he was held entitled in both cases. It is true, that, in those cases, the point of controversy was as to the validity of the devise, and no question was raised as to the heir's title upon the devise being held void. But the cases serve to shew that the doctrine of resulting trusts under a qualified conversion of real estate is fully recognized and was not intended to be disturbed by *Ferguson's lessee vs. Hedges.* It matters nothing that, in the two cases cited, the claim of the heir was against the administrator, and not against a residuary devisee or legatee ; for, under a qualified conversion, the heir takes what is ineffectually disposed of, whether his claim be against the administrator the next of kin or a residuary legatee. It can hardly have escaped notice, that, in nearly all the long series of cases of qualified conversion, in which the title of the heir was sustained, his claim was against a residuary legatee— sometimes the general residuary legatee and sometimes the person to whom the surplus of a particular fund was given, as in this case. It could not be otherwise, because, as we have before seen, the heir takes under a resulting trust, by virtue of his right of inheritance, which must be equally availing as to proceeds of real estate undisposed of, by whomsoever his right may be challenged.

The conclusion is that so much of the proceeds of the lot sold under Mrs. McKegney's will as would have been taken by Enos H. Barr, if living, does not pass with the residue of the fund to Mr. Reilly. Nor, for reasons before

stated, can it be claimed by Mrs. McKegney's next of kin. To the extent of this portion of the fund, the power must be treated as unexecuted and the money results to those who would have taken the land had no execution of the power been attempted. These are the heirs at law of the grantor in the trust deed, Mrs. McKegney, to whom the land is limited over by deed, in default of the execution of the power.

A final decree ought not to be entered until an administrator's account has been passed, ascertaining what is the net balance in the administrator's hands, applicable to the legacy, and whether the whole amount of the $3,000 bequeathed to Enos H. Barr, with interest, from one year after the death of the testatrix will remain, or whether the expenses connected with the settlement of the estate, will require any abatement from the legacies. It does not seem probable that any abatement will be required, as the proceeds of the land coming to the administrator's hands greatly exceeds the legacies, still, the result ought to be ascertained by the proper proceeding, to warrant a decree disposing of the money bequeathed to Barr.

The present decree therefore will be an interlocutory one, directing that the administrator, on or before the ensuing September Term, pass, before the Register of Wills, a final account of his administration, and that he file in this case a certified copy of such account when passed.

February 1st, 1872.

The administrator having passed a final administrative account and filed in this Court a certified copy of the same, pursuant to the interlocutory decree, it appeared that there was an unappropriated balance of the proceeds of the real estate, applicable to the legacies, of $4207.54, which sum was insufficient to pay the legacies in full.

*G. B. Rodney*, suggested that the legacy of $3,000 to Enos H. Barr, having resulted to the heirs at law, as real

estate, being taken by descent and not under the will, was not subject to abatement with the other legacies.

THE CHANCELLOR :—

This legacy must abate with the others. The question is not whether a resulting trust to the heir is subject to abatement, but rather what is it that results to him whether the whole sum of $3000 bequeathed to Barr or only so much of it as in the condition of the assets he could have taken had he survived the testatrix.

The effect of a resulting trust is that the heirs at law are substituted in the place of the intended legatee, and though they take by a different title, that is, by descent and not under the will, yet they take only what, had he lived, would have fallen to him in the distribution of the proceeds, which would have been his proportionable part, after abatement with the other legacies. It is that part which, in the event, becomes actually undisposed of by the will, and which therefore results to the heirs. There is no direct decision to the point, but, in 1 *Roper on Legacies*(414), a book of good authority, the principle is very clearly stated and illustrated, that the heir at law under a resulting trust can be in no better situation than the legatee or devise, to whose place he is substituted.