WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Guardian for Joseph W. Donner, Jr., and Carroll E. Donner, Jr., by appointment of the Orphans' Court of the State of Delaware, in and for New Castle County,

> Complainant,

THE MARINE TRUST COMPANY OF BUFFALO, a corporation of the State of New York, and CARROLL E. DONNER, now Lady Carroll Tennyson, Executors, and THE MARINE TRUST COMPANY OF BUFFALO, Trustee under the last Will and Testament of Joseph W. Donner, deceased,

> Intervening Complainants,

*vs.*

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Succeeding Trustee under a certain Trust Agreement, dated November 20th, 1920,

> Defendant.

*New Castle, Aug. 6, 1940.*

128

*William H. Foulk,* of the firm of Satterthwaite & Foulk, for Wilmington Trust Company, Guardian for Joseph W. Donner, Jr., and Carroll E. Donner, Jr., complainant.

*Paul Leahy,* of the firm of Southerland, Berl, Potter & Leahy, and *James McC. Mitchell,* of the firm of Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y., for Marine Trust Company of Buffalo, and Carroll E. Donner, now Lady Carroll Tennyson, executors, and Marine Trust Company of Buffalo, trustee under the last will and testament of Joseph W. Donner, deceased, intervenors.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for Wilmington Trust Company, succeeding trustee under the trust agreement dated November 20th, 1920.

*Reuben Satterthwaite, Jr.,* and *William S. Satterthwaite,* for Robert N. Donner, Elizabeth Donner Winsor and Dora B. Donner, Jr.

THE CHANCELLOR: This case is before this court on a motion for a reargument and, among other things, involves difficult questions growing out of a conflict between the laws of the State of Delaware and the laws of the State

of New York. It was decided against the Wilmington Trust Company, as trustee, by the late Chancellor (*Wilmington Trust Co. v. Wilmington Trust Co.*, 21 *Del. Ch.* 188, 186 *A.* 903), but no decree had been signed by him at the time of his death, and an informal request for a reargument was then pending. Since that opinion was filed, some of the pleadings have been reframed and somewhat clarified by amendment, and some additional facts, which are claimed to have a material bearing on the intent and meaning of certain provisions of the trust deed and on certain other phases of the case, have been produced.

On November 20th, 1920, William H. Donner, then a resident of the City of Buffalo, New York, executed a deed in which he granted, transferred and conveyed certain shares of corporate stock to Dora Browning Donner, his wife, in trust, however, for certain purposes, expressly provided for in that deed. Under its provisions, the trustee was to collect the income from the corpus of the trust and to pay the same as follows: one-fourth to the donor's wife, Dora Browning Donner, for life, and the remaining three-fourths thereof during his wife's life, and the whole of such income after her death to his five children named therein, and then living, and to any child that might be thereafter born to him, share and share alike, for life. When this deed was executed there were three adult beneficiaries, including Joseph W. Donner, one of the sons of the grantor, and Dora Browning Donner, his wife. Three minor beneficiaries were, also, named in the deed.

The "Second" paragraph of that instrument, among other things, provided that:

"*Upon the death of each of my said children,* excepting Robert Newsom Donner, but not sooner than ten years from this date unless my daughter, Elizabeth Browning Donner, shall have died prior to that time, or unless a majority of the adult beneficiaries hereunder consent in writing and so advise the Trustee, *the trust herein created shall, except as hereinafter provided, cease and be at an end to the extent of the deceased child's interest or share in the trust fund then subject hereto, that is, the share of the principal of the trust fund from which his or her income has been derived, which share and*

*any and all property and securities held under the trust to produce the income for such child, shall be paid, transferred, conveyed and delivered to such lawful child or children or other lawful lineal descendants of the Donor then surviving, and in such proportions, and subject to such lawful conditions, as such deceased child shall appoint and designate by last will and testament, or other instrument, duly executed, sufficient for that purpose;* and in the absence of such designation or appointment, said share shall at the time so fixed go to the lawful child or children or other lawful lineal descendants of the deceased child, per stirpes, free and clear of all trusts and conditions;  *  *  *"

The same paragraph of the trust deed contains a proviso, however,

"*  *  * that said deceased child may by his last will and testament devise a portion of said share (not exceeding one-fourth thereof, unless authority is given by the Donor to devise a larger portion by a writing filed with the trustee) to such person or persons, other than said surviving children and lineal discendants, as he or she may appoint, designate and select;  *  *  *"

By deed, dated October 9th, 1929, Joseph W. Donner, one of the sons of William H. Donner, appointed and designated his two minor children, Joseph W. Donner, Jr., and Carroll E. Donner, Jr., as the persons to take, at his death, all the rights and interests in the trust.fund previously enjoyed by him. That deed expressly referred to the power given Mr. Donner by the trust deed of November 20th, 1920, and was, undoubtedly, intended to exercise that power; but the primary question to be determined is whether it could be exercised by deed. The answer to that question depends on whether on October 9th, 1929, the interpretation of the trust deed was governed by the laws of the State of Delaware or by the laws of the State of New York. If governed by the laws of the latter State, it is conceded that the attempted exercise of the power of appointment by deed is invalid, and passes no rights to the persons named therein. See *Wilmington Trust Co. v. Wilmington Trust Co.,* 21 *Del. Ch.* 188, 186 *A.* 903.

It cannot be denied that, at the time of the execution and delivery of the trust deed of 1920, both the validity of

the trust, intended to be created thereby, and the interpretation of the provisions of that deed were governed by the laws of the State of New York. Both the donor and the trustee then lived in that state; the deed was executed and delivered there; the corporate securities, which then composed the corpus of the trust, were apparently in New York and were delivered to the original trustee there, and at that time there was nothing, whatever, to connect the location and place of administration of the trust with the laws of any other state.

The original validity of the trust under the laws of New York is questioned by the Wilmington Trust Company, as trustee, on the ground that it violated *Section* 11 of the *New York Personal Property Law, Consol. Laws, c.* 41. That section prohibits the suspension of the absolute ownership of personal property for a longer period than during the continuance of, and until the termination of, not more than two lives in being at the date of the instrument containing such limitation or condition. That corporation, also, contends that a new trust, on precisely the same terms, was subsequently created by William H. Donner in the State of Delaware. But in any event the important question to be determined is whether the New York law in any way governed the trust deed after January of 1924, and whether on October 9th, 1929, its real location and place of administration had been lawfully moved to the State of Delaware, and was then wholly governed by the laws of that state. If it had then become a Delaware trust, and was governed by the laws of that state, its validity is not questioned.

The controversy, as to the law governing the interpretation of the trust deed, hinges on the purpose and intent of the "Tenth" paragraph of that instrument, when, read in connection with the pertinent facts. That paragraph provides that:

*"A majority of the adult beneficiaries hereunder shall have the right, subject to the approval of the Donor during his lifetime * * * * * * * to change from time to time the Trustee hereunder, or under any of said*

*separate trusts, to any successful trust company (of any State) that has been in business not less than ten (10) years and has capital and surplus of not less than One Million Dollars;* and in the event this right to change the Trustee is exercised the Trustee then in office shall be entitled to ninety (90) days prior notice in writing unless such notice is waived by it."

After providing that in the event of a change in the trustee, the retiring trustee "shall transfer, assign and deliver all the moneys, securities and properties then subject hereto to such trustee as shall be then designated," the same paragraph further provides:

" * * * *which successor trustee shall hold the said trust estate subject to all the conditions herein to the same effect as though now named herein."*

It is contended that the appointment of the Wilmington Trust Company as successor trustee was an administrative detail, merely changing the trustee, but in no way affecting the real location of the trust or the law originally governing the interpretation of the deed that created it. After a trust has been set up in one state, the mere removal of the trustee to another state, though he takes the trust assets with him, will not alter its original location, or the law governing its interpretation and administration. *Swetland v. Swetland,* 105 *N. J. Eq.* 608, 149 *A.* 50; 2 *Beale Conf. Laws,* 1024; see, also, 44 *Harv. Law Rev.,* 181, *note.* Moreover, there may be cases where the appointment of a successor trustee in a state, other than the one in which the trust was originally created, will not change its real legal location (*Beale Conflict of Laws,* 1023) ; but the facts of this case would seem to indicate that something more than mere administrative action was intended by the provisions of the "Tenth" paragraph of the trust deed.

When a conflict of laws is involved, the rules governing the validity and interpretation of trusts *inter vivos* of personal property frequently present difficult questions; and the proper exercise of a power of appointment, provided for in a deed creating a trust of that nature, is no exception to that rule. In analogy to the rule, usually applied in testa-

mentary trusts, the law of the domicile of the donor at the time of the creation of a trust *inter vivos* of personal property has frequently been applied as the governing rule in determining the validity of the trust and the interpretation of its provisions. *Curtis v. Curtis,* 185 *App. Div.* 391, 173 *N. Y. S.* 103 (32 *Harv. Law Rev.* 729) ; *Swetland v. Swetland,* 105 *N. J. Eq.* 608, 149 *A.* 50. But whatever effect the law of the domicile of the testator may have ordinarily on the exercise of a testamentary power of appointment, in *Wilmington Trust Company v. Wilmington Trust Company* (21 *Del. Ch.* 188, 186 *A.* 903) the late Chancellor correctly recognized the fact that a power of appointment over personal property, given by a trust *inter vivos,* involved very different considerations. See, also, *Hutchison v. Ross,* 262 *N. Y.* 381, 187 *N. E.* 65, 89 *A. L. R.* 1007; *Goodrich Conf. Laws,* § 161; 44 *Harv. Law Rev.,* 161, etc. He, therefore, held that the old maxim *"mobilia sequuntur personam"* had no application to trusts of that nature, and that the law of the domicile of the grantor was not necessarily controlling, as in most cases of testamentary trusts. I am in entire accord with that conclusion.

The validity and interpretation of a trust deed of land is necessarily governed by the laws of the state in which it is located. 1 *Bogert on Trusts and Trustees,* § 211. Applying somewhat similar principles, it has been said that the law of the location at that time of chattels, money or securities, given in trust, ordinarily supplies the governing rule. *Hullin's Heirs v. Faure,* 15 *La. Ann.* 622; *Beale Conf. Laws,* 1018, 1019; *Restat. Confl. Laws,* § 292 (2) ; 45 *Harv. Law Rev.,* 969, 970; 15 *C. J. S., Conflict of Laws,* § 18, *p.* 936; see, also, *Hutchison v. Ross,* 262 *N. Y.* 381, 187 *N. E.* 65, 89 *A. L. R.* 1007; *City Bank-Farmers Trust Co. v. Whiteing,* 136 *Misc.* 416, 241 *N. Y. S.* 398; *Bouree v. Trust Francais, etc.,* 14 *Del. Ch.* 332, 127 *A.* 56.

In determining the same questions, some cases apply the law of the place where the trust is to be administered. *Beale Conf. Laws,* 1023; see, also, *Curtis v. Curtis,* 185 *App.*

*Div.* 391, 173 *N. Y. S.* 103 (32 *Harv. Law Rev.*, 729) ; *Second National Bank v. Curie,* 116 *N. J. Eq.* 101, 172 *A.* 560; *Equitable Trust Co. v. Pratt,* 117 *Misc.* 708, 193 *N. Y. S.* 152; see, also, *Hope v. Brewer,* 136 *N. Y.* 126, 32 *N. E.* 558, 18 *L. R. A.* 458; *Robb v. Washington & Jefferson College,* 185 *N. Y.* 485, 78 *N. E.* 359. Still other cases hold that the intent of the grantor, with respect to the location of the trust, and, therefore, as to the governing law, is controlling; and that such intent must be determined from a consideration of all of the facts and circumstances, including those above referred to and any pertinent provisions of the trust deed. *Hutchison v. Ross,* 262 *N. Y.* 381, 187 *N. E.* 65, 89 *A. L. R.* 1007; *Greenough v. Osgood,* 235 *Mass.* 235, 126 *N. E.* 461; *Beale Conf. Laws,* 1023, 1024; see, also, *Curtis v. Curtis,* 185 *App. Div.* 391, 173 *N. Y. S.* 103. Technically, perhaps, it may be said that a determination of the actual location of the trust is not so much a question of intent as of the existence of such facts and circumstances as reasonably and fairly indicate a real connection with the particular state in which it is alleged to be located. See 50 *Harv. Law Rev.*, 1157; *Columbia Law Rev.*, *(Jan.* 1937) *p.* 125. At any rate, the late Chancellor adopted the so-called intent rule, and I am likewise in accord with that conclusion. I differ from him, however, in applying that rule to the facts; but some of these facts were not before him.

It has been aptly said that:

"Many questions depend upon fixing the seat of the trust, that is the place where the trust is to be located and administered. In the case of a living trust (a trust *inter vivos*) this is determined by the intention of the settlor; but this intention is often very difficult to find as a matter of interpreting the instrument. If the trustee is a bank or trust company, the almost inevitable inference is that the seat of the trust is at the principal office of the bank. * * * * * * If the case cannot be settled thus, various circumstances may be considered, such as the domicile of the settlor, the *situs of the trust res,* or other similar circumstances." *Beale Conf. Laws,* 1023; see, also, 1 *Bogert on Trusts and Trustees,* § 132, *p.* 398.

Applying that rule, all matters relating to the administration of a trust *inter vivos* are ordinarily determined by

the law of its location [*Beale Conf. Laws,* 1024; 45 *Harv. Law Rev.,* 970; *In re Fitzgerald* (1903) 1 *Ch.* 933]; and in most cases the distribution of funds by the trustee, pursuant to the direction of a power of appointment contained in the trust deed, seems to be within that rule. *Beale Conf. Laws,* 1010; *Greenough v. Osgood,* 235 *Mass.* 235, 126 *N. E.* 461; see, also, *Pouey v. Hordern,* [1900] *L. R.* 1 *Ch.* 492.

In determining the location of the trust on October 9th, 1929, when the power of appointment is alleged to have been exercised by Joseph W. Donner, the intent rule must be applied, and the facts considered. The right given by the "Tenth" paragraph of the trust deed of November 20, 1920, to appoint a successor trustee or trustees in another state, and to transfer the trust assets to any such trustee, is vested in a majority of the adult beneficiaries, and is not reserved by the donor of the fund; but the machinery selected by him to effect a possible change in the location of the trust would seem to be of little importance in determining the purpose and effect of the provisions under consideration. The fund, composing the original corpus of the trust, was not only a gift by Mr. Donner, but the procedure provided for in the deed was subject to his approval during his lifetime; and such approval was secured when the Wilmington Trust Company was appointed successor trustee, and the trust property delivered to that corporation. It must be conceded that the actual removal of the location and place of administration of the trust to a jurisdiction, other than the State of New York, might, in some respects, affect the rights of the beneficiaries named in the deed and their appointees; and that fact was strongly emphasized by the court in the previous opinion. But even if the machinery for the appointment of any such successor trustee, and the possible results arising therefrom, be somewhat unusual, that is not sufficient to rebut an apparent intent of the donor to change the location of the trust. It is evident from the provisions of the trust deed that any successor trustee that might ultimately be appointed was intended to be a corporation, having its

place of business in another state. Moreover, that deed further provided that any such trustee should hold the trust estate subject to all of the conditions of the deed "to the same effect as though now named herein." This provision would seem to have considerable bearing on the real intended meaning of the word "change," as used in the "Tenth" paragraph of the deed. If the Wilmington Trust Company had been the original grantee in trust, an intent to locate the administration of the trust in the State of Delaware would have been apparent. Ordinarily a party to a written instrument cannot testify as to the real intent and meaning of a particular sentence, phrase or paragraph of that instrument [*Colvocoresses v. W. S. Wasserman & Co.*, 8 *W. W. Harr.* (38 *Del.*) 253, 190 *A.* 607], but in cases of question with respect to its real meaning, the court can consider pertinent surrounding facts and circumstances in order to place itself, as far as possible, in the position of the person who executed that instrument. Such facts and circumstances are, however, admitted and considered by the court merely "to resolve what is uncertain, but not to change or contradict what is plain, nor to substitute or insert new matter." *Maloney v. Johnson*, 24 *Del. Ch.* 77, 5 *A.* 2d 660, 661. In other words, the purpose of such evidence is merely to aid in interpreting the language of the instrument in controversy. *Crockett v. Green*, 3 *Del. Ch.* 466.

In *Colvocoresses v. W. S. Wasserman & Company*, 9 *W. W. Harr.* (39 *Del.*) 71, 196 *A.* 181, 184, *supra*, the Superior Court, in quoting from *Eustis Mining Company v. Beer, Sondheimer & Co., et al.*, (*D. C.*) 239 *F.* 976, aptly said:

"All the attendant facts constituting the setting of a contract are admissible, so long as they are helpful; the extent of their assistance depends upon the different meanings which the language itself will let in. Hence we may say, truly perhaps, that, if the language is not ambiguous, no evidence is admissible, meaning no more than that it could not control the sense, if we did let it in; indeed, it might 'contradict' the contract—that is, the actual words should be remembered to have a higher probative value when explicit, than can safely be drawn by inference from surroundings. Yet, as all language will bear some different meanings, some evidence is always admissible;

the line of exclusion depends on how far the words will stretch, and how alien is the intent they are asked to include."

This principle is applicable to other written instruments, as well as to contracts. There are certain statements in the deposition of William H. Donner, taken on behalf of the Wilmington Trust Company, as trustee, to the effect that at the very inception of the trust he intended ultimately to remove it to Delaware unless there should be an unfavorable change in the tax laws of that state, and that prior to the execution of the trust deed he had discussed that matter with the adult beneficiaries and was satisfied that they would approve of that change. These statements were objected to by the other parties to this suit, and, applying the principles above referred to, must be disregarded by this court. In considering this question, we must bear in mind that substantial additions to the corpus of the trust were made by Mr. Donner before the transfer of the assets to Delaware. His statement that, prior to the execution of the trust deed of November 20th, 1920, he had investigated the tax laws of several states in order to determine whether they were favorable for his purpose; that at the creation of the trust the securities placed therein by him produced very little income and that he, therefore, made his wife, Dora Browning Donner, the trustee; that he contemplated substantial additions to the corpus of the trust and realized that when this was done Mrs. Donner would be wholly incapable of managing it, would seem to throw some light on the intent and purpose of the provisions incorporated by him in the "Tenth" paragraph of the trust deed, and may, therefore, be considered by this court in determining whether something more than a mere change in the trustee was intended if that paragraph should be acted on. None of these facts appeared before Chancellor Wolcott.

In this state, a power to appoint by will, or otherwise, authorizes an appointment by deed (*Wilmington Trust Co., v. Wilmington Trust Co.*, 21 *Del. Ch.* 102, 180 *A.* 597) ; and, in view of all the facts, my conclusion is that on October 9th,

1929, the location of the trust had been legally moved to Delaware, and on that date the validity of the power of appointment, exercised by Joseph W. Donner, was controlled by its laws and could, therefore, be exercised by deed. After January of 1924, it would seem to be difficult to argue that a bill for an accounting by the trustee could be filed in any other state.

The provisions of the "Sixth" paragraph of the trust deed are not inconsistent with this conclusion. That paragraph merely provided that the trustee shall not be required to convert the securities, then or at any time thereafter "delivered to her  *  *  *  by the donor or by any beneficiary  *  *  *  in new investments or securities designated under the laws of New York, or any other state, as trust investments." So far as this question is concerned, the words "or any other state" clearly show that the prior reference to the laws of New York had no particular significance.

Conceding that, in most cases, the validity or invalidity of a trust in the state in which it was originally created and intended to be administered determines the legality of any administrative action taken under it, I see no reason why that rule should apply when the act, which is claimed to be invalid, was done after the location of the trust and its assets had been legally moved to another jurisdiction pursuant to the provisions of the trust deed, and with the intent that such trust should be administered there. The cases above cited are consistent with this conclusion. The original validity of this trust in New York is both upheld and denied by the solicitors for the various contending parties. It seems unnecessary to consider the various contentions made; but, if invalid in that state, it was, in effect, subsequently recreated by Mr. Donner in this state on precisely the same terms appearing in the deed of November 20th, 1920. He did not execute a new deed after January of 1924, but he assented to the action taken by the adult beneficiaries in naming the Wilmington Trust Company successor trustee, and to the

removal of the trust fund to this state; and that fund has been administered here, without objection from him, since that time. Moreover, he has repeatedly made additions to the fund in this state since the appointment of the successor trustee, and the letters accompanying the delivery of the cash or securities in question in each case respectively referred to the "Seventh" paragraph of the trust deed, which permitted additions to be made either by the donor or by any of the beneficiaries named therein. Under the circumstances, it can hardly be said that Mr. Donner did not intend to abide by the provisions of the trust deed, or to recognize the trust created thereby.

In *Scott on Trusts, Section* 23, the author aptly said:

"In the absence of a statute it (meaning the intent to create a trust) can be properly manifested not only by written or spoken words but also by conduct."

In *Section* 24, the same author, also, said:

"When the owner of property transfers it to another, with a direction to transfer it to, or to hold or deal with it for the benefit of a third person, this may be a sufficient manifestation of an intention to create a trust."

This trust merely related to personal property, and I know of no reason why this rule should not apply in this state.

Some of the beneficiaries under the trust deed, including Joseph W. Donner, also, made additions to the trust after its removal to Delaware, which were accompanied by letters similar to those written by Mr. Donner. Both the letters of Mr. Donner and of the beneficiaries, also, specifically directed that the added funds should be allocated to certain specified separate trusts. Such additions were made both by Joseph W. Donner and by William H. Donner for the benefit of a separate trust fund for Joseph. Perhaps, because of the directions contained in these letters, the Wilmington Trust Company in each case segregated the cash and securities, so added to the trust, to the various separate trust funds referred to therein. No separate trusts had pre-

viously been set up in the State of New York, though the deed authorized it, and certain notations with respect to investments made from the surplus income of the minor beneficiaries appeared on Mrs. Donner's books. The solicitor for the Wilmington Trust Company stresses the segregation of the added securities in support of his contention that entirely new and separate trusts, which by reference incorporated the terms of the original deed, were created in Delaware. He particularly stresses the fact that, though under the terms of the trust deed Mrs. Donner was entitled to one-fourth of the income on the corpus of the fund during her lifetime, and that proportion of the capital could be segregated in a separate trust for her benefit during her life, the letter of William H. Donner to the trustee, dated September 17th, 1929, enclosing a check for $420,700.00, expressly directed that the money represented thereby was "to be placed in said recited trust for her benefit and invested in securities, all the income from which is to be paid to her." But, in view of my conclusion as to the effect of the "Tenth" paragraph of the trust deed on the location of the trust after the appointment of the successor trustee, it seems unnecessary to consider that question.

The will of Joseph W. Donner was executed February 4th, 1927, but did not take effect until after his death in November of 1929, and, therefore, one month after the execution of the deed of October 9th, 1929. That deed contained no provision making the appointment, for the benefit of his children, revocable, and the claim of the intervening complainants that the power vested in him was, in fact, exercised by the residuary clause of his will is necessarily based on the theory that the deed was wholly inoperative as an exercise of the power. See 1 *Sugden on Powers*, (3d *American Ed.*) 293, and other authorities cited in *Wilmington Trust Co., v. Wilmington Trust Co.,* 21 *Del. Ch.* 102, 180 *A.* 597. If the deed of October 9th, 1929, took effect at all and created any valid interests, it is apparent that neither the intervening complainants, the executors of and

the trustee under the will of Joseph W. Donner, nor his widow, Lady Carroll Tennyson, can have any interest, under the residuary clause of his will, in his share of the trust fund created by William H. Donner, or in any additions made thereto either by Joseph W. Donner, himself, or for his benefit. In view of that fact, it is unnecessary for me to consider whether that clause of the will could, under any circumstances, operate as a valid exercise of the power.

But, though the exercise of the power by Joseph W. Donner was governed by the laws of this state, and could, therefore, be exercised by deed, there are· other questions to be considered before a final conclusion, as to the rights of the parties, can be reached.

The bill was filed by the Wilmington Trust Company as guardian for Joseph W. Donner, Jr., and Carroll E. Donner, Jr., minor children of Joseph W. Donner, deceased, and, among other things, prays for an accounting by the trustee. One of the questions to be determined, therefore, is whether the corpus of the fund, on which Joseph W. Donner received the income during his life, and the accumulated income thereon since his death, is immediately payable to the guardian for his minor children, or whether the appointment in trust for the lives of said minors is a valid limitation on their rights. The deed of October 9th, 1929, by which Joseph W. Donner exercised the power of appointment vested in him by the trust deed of November 20th, 1920, directed that, at his death, any and all property and securities subject to that power should be held by the trustee

"* * * as a separate trust fund under the said Article of Trust for the benefit of my said children, Joseph W. Donner, Jr., and Carroll Donner, share and share alike, under and subject to the terms and conditions thereof; the income therefrom to be paid to my said children in equal shares, the amount of income so payable, however, during minority to either such child, except payments to his or her guardian, or guardians, necessary in the discretion of said guardian or guardians, signified by written demand upon the Trustee, for proper care, maintenance and education, shall be invested by the Trustee in the same manner as in Paragraph 'Eighth' of said Article of Trust

provided, and shall be accumulated for the benefit of said child, and, if it is lawful to do so, shall be held by the Trustee thereunder as a separate trust for the benefit of said child; otherwise it shall be paid over to said child in the form in which it is invested at the time upon his or her arrival at the age of twenty-one years.

"Upon the death of each of my said children, the Trust shall cease and be at an end to the extent of said deceased child's interest or share in such separate trust fund, which share and any and all property and securities so held under the trust to produce income for such child shall be paid, transferred, conveyed and delivered as such child shall have devised or designated, and in the absence of such devise or designation, to his or her lawful lineal descendants, if any; otherwise to remain in trust for the benefit of the survivor of my said children, and if there be no such survivor, then the said share shall remain as part of the principal of said trust for the benefit of all of the *cestui que trustent* thereunder."

In harmony with the revocation provision of the trust deed, the deed of October 9th, 1920, also, provides:

"In the event of the termination in whole of said trust created by William H. Donner prior to the death of both of my said children, then the said separate trust fund so held for the benefit of my said children shall be paid and distributed to my two said children in equal shares, or to their lineal descendants then surviving, per stirpes, or to the survivor of them."

An analysis of the terms of the deed of October 9th shows that it provided that at Joseph W. Donner's death any and all property and securities, subject to his power to devise or appoint, should be held by the trustee as a separate fund under the said Article of Trust for the benefit of his children: (1) "Under and subject to the terms and conditions thereof," meaning the trust deed of November 20th, 1920; (2) that the income from the corpus of the fund so appointed was to be paid to Joseph's children in equal shares and during their minority any surplus income not needed for their maintenance and education was to be invested by the trustee in the same manner as provided for in paragraph "Eighth" and accumulated as a separate trust for the benefit of any such child or children if lawful to do so, otherwise it was to be paid over to such child or children in the form in which it was then invested on his or her arrival at the age of twenty-one years; (3) upon the death of each of said

children, the trust was to cease to the extent of that child's interest in such separate trust fund, which share and any and all property and securities so held under the trust to produce income was to be transferred and delivered as such child should have "devised or designated," and in the absence of such devise or designation the fund should go to his or her lawful lineal descendants, if any; (4) if no such descendants, the fund was to remain in trust for the benefit of the survivor of such children, and if there was no such survivor should remain as a part of the principal of the trust for the benefit of all the *cestui que trustent* in the trust deed of November 20th, 1920.

The Wilmington Trust Company, as guardian for the minor children of Joseph W. Donner, deceased, makes two contentions, with respect to the effect of this deed:

(1) That, in exercising the power of appointment, the limitation in trust for life, for the benefit of such children, was an unauthorized and invalid restriction on their rights, as appointees of the fund under the trust deed, and must, therefore, be disregarded; and that the funds in question should be immediately delivered or paid by the trustee to such guardian, clear of any trust.

(2) That, conceding the life estates appointed to the children of Joseph W. Donner, standing alone, did not violate the rule against perpetuities, the subsequent limitations under the deed of October 9th, 1929, were void; and, as such life interests were a component and inseparable part of a general scheme, intended to tie up the estate subject to appointment beyond the period permitted by that rule, the whole deed was void, and the property rights in question vested in the minor children of Joseph W. Donner under the trust deed of 1920, free of any trust, to the same extent as though no appointment had been attempted. The Chancellor rejected both of these contentions.

The rights and interests appointed by the deed of October 9th, 1929, were created pursuant to the power given by

the trust deed of November 20th, 1920, and must be regarded as having been created by that instrument. *Equitable Trust Co. v. Snader*, 17 *Del. Ch.* 203, 151 *A.* 712. The Chancellor reached the same conclusion in *Wilmington Trust Company v. Wilmington Trust Company*, 21 *Del. Ch.* 102, 180 *A.* 597; and whether Joseph W. Donner's deed was a valid exercise of the power depends upon the provisions of the original deed, and the applicable rules of law when the two deeds are read together and the rights, attempted to be given thereby, are considered.

The "Second" paragraph of the trust deed provided:

"All property and securities held under the trust to produce the income for such child shall be paid, transferred, conveyed and delivered to such lawful child or children, or other lawful lineal descendants of the Donor, then surviving, and in such proportions and subject to such lawful conditions as such deceased child shall appoint and designate by last will and testament, or other instrument duly executed sufficient for such purpose."

It is apparent from this language that the right of Joseph W. Donner to appoint his share in the trust estate was not confined to his children, but included any "lawful child or children or other lawful lineal descendants of the donor, then surviving"; Joseph's children were, however, in that class. The trust property, so appointed, could, also, be "in such proportions and subject to such lawful conditions as such deceased child shall appoint and designate." In construing this provision, we must bear in mind that the intent of the donor of the power, as ascertained from the entire language of the trust deed, necessarily governs its scope, and determines what, if any, limitations may be engrafted on the rights or interests appointed. *Harker v. Reilly*, 4 *Del. Ch.* 72; *Matter of Kennedy's Will*, 279 *N. Y.* 255, 18 *N. E.* 2d 146; 4 *Kent's Com.* 345; 49 *C. J.* 1266. But where the power is general, as to the *quantum* of the estate which may be appointed, the donee may appoint a lesser or qualified estate in the property, and it is not necessary to exercise the power in its entirety, and to its full extent. This rule is based on the principle that the lesser right is

included in the greater. *Hillen v. Iselin,* 144 *N. Y.* 365, 39 *N. E.* 368; *Harker v. Reilly,* 4 *Del. Ch.* 72; *In re French's Estate,* 119 *Misc.* 445, 196 *N. Y. S.* 397; 49 *C. J.* 1266. This principle has been long recognized and applied in this state (*Harker v. Reilly,* 4 *Del. Ch.* 72) ; and was approved by the Chancellor in *Wilmington Trust Co. v. Wilmington Trust Co.,* 21 *Del. Ch.* 102, 180 *A.* 597. If *Matter of Kennedy's Will,* 279 *N. Y.* 255, 18 *N. E.* 2d 146., and other subsequent New York cases based thereon, intended to lay down any different rule, this court is not bound thereby, as the trust had become a Delaware trust long prior to October 9th, 1929, at which time the power was executed. Moreover, a careful reading of the opinion in Kennedy case would seem to lead to the conclusion that the power involved was regarded as special and limited, and in no sense general, as to the *quantum* of the estate that could be appointed. Nor do I find any provisions in the trust deed indicating an intent to limit or restrict the nature of the rights or interests that could be created by the power vested in Joseph W. Donner by the trust deed. The language used in the deed of October 9th, 1929, with respect to the income payable to Joseph W. Donner's minor children, was almost an exact quotation from the last portion of the "First" paragraph of the original deed, providing for the investment of any unexpended income belonging to the minor beneficiaries. The "Fifteenth" paragraph of that deed provided:

"All payments authorized to be made by the Trustee hereunder shall be for the sole and separate use of the *cestui que trustent,* and shall be paid to them directly and to no other person or persons, and the *cestui que trustent* shall not have the right to sell or appoint the same, or any part thereof, nor the power to dispose thereof by anticipation or otherwise, and said income or payments authorized as aforesaid shall not be liable for any of their debts or engagements, nor subject to attachment, levy, sequestration, or execution of any kind; provided, however, that any child of the Donor, who is a beneficiary hereunder, may assign to his own child or children any portion or portions of the income payable under the terms hereof to such beneficiary."

The appointment in trust for life to Joseph W. Donner's minor children, and the direction for the investment of any

unexpended income, due them, not necessary for their education and maintenance, perhaps indicates an intent to preserve both the corpus of the fund and such unexpended income for their protection, and is, in no way, inconsistent with the provisions of either the "Fifteenth" paragraph of the trust deed or with any other provisions of that instrument; but on the contrary is in harmony therewith.

The solicitor for the guardian contends that the last part of the "Fifteenth" paragraph of the trust deed shows that such an intent could only apply to the income payable to Joseph W. Donner, and not to any limitations on the rights of his children, as appointees of his interest. That part of the paragraph provided that any beneficiary under the deed might assign any portion, payable under the terms thereof to such beneficiary, to his child or children. But, in view of the broad language of the "Second" paragraph of the trust deed, to the effect that any appointment made could be "in such proportions and subject to such lawful conditions as such deceased child" should designate, no such limited construction, as to the intent of the grantor with respect to the rights that could be appointed, would seem to be justified. In view of the language used, it is fair to conclude that the word "proportions" might be construed to mean not only the share of the corpus which might be given to any beneficiary, but likewise the *quantum* of the estate which might be given. *Beardsley v. Hotchkiss,* 96 *N. Y.* 201, lends some support to that contention.

Furthermore, in *Harker v. Reilly,* 4 *Del. Ch.* 72, the court said:

"In construing powers, the court looks to the end and design of the parties and to the substantial, rather than the literal execution of them."

Regarding the provisions of the deed of October 9th, 1929, as incorporated in the original trust deed, the equitable rights and interests first given thereby are to Joseph W. Donner for life, with remainder to his children for life, It is conceded that these provisions, standing alone, do not

violate the rule against perpetuities. The remainders given absolutely to the appointees of Joseph W. Donner's children and, in default of such appointment, to their lineal descendants, are, however, in violation of that rule, and cannot be enforced. *Equitable Trust Co. v. Snader,* 17 *Del. Ch.* 203, 151 *A.* 712. The guardian, therefore, contends that these provisions are so inseparably connected that the remainders given to the minor children of Joseph W. Donner are, also, void. But, as I view it, the language used does not justify that conclusion, and the life estates in question are independent and separable provisions, and are, therefore, valid. See *Equitable Trust Co. v. Snader, supra.* The same conclusion was reached by Chancellor Wolcott in *Wilmington Trust Co. v. Wilmington Trust Co.,* 21 *Del. Ch.* 102, 180 *A.* 597. Quoting from *Gray on Perpetuities, paragraph* 249, he aptly said:

"\* \* \* that a life estate, good in itself, is not destroyed by the remainder-over being bad for remoteness or any other reason."

For these reasons, it is apparent that the fund in question is still held in trust and cannot be legally transferred and delivered to the guardian for Joseph W. Donner's minor children.

William H. Donner, Jr., one of the children of the donor and one of the beneficiaries under the trust deed of November 20th, 1920, died on or about January 23rd, 1931, while still a minor, unmarried and without issue, and without having exercised the power of appointment conferred upon him by that deed. This appears both from the amended bill and the cross-bill, and is admitted by the answers. At the time of the death of William H. Donner, Jr., all of the original beneficiaries of the trust were living, except his brother, Joseph W. Donner, who had died November 9th, 1929. As previously stated, Joseph W. Donner left to survive him two minor children, Joseph W. Donner, Jr., and Carroll E. Donner, Jr., for whom the Wilmington Trust Company is guardian. During his lifetime William H. Donner, Jr.,

participated in the income from the original trust fund and from the additions made thereto in the State of New York, and, also, received the income from the separate trust fund set up for his benefit by the Wilmington Trust Company after its appointment as successor trustee. Some surplus income was, also, invested and held in trust for his benefit, pursuant to the directions of the trust deed; and the questions to be determined are whether any share of these funds passed in trust for life to Joseph W. Donner's children under the deed of October 9th, 1929, or whether, under the terms of the trust deed, they are entitled to participate in those funds in any other manner. The "Second" paragraph of the trust deed gave powers of appointment to the donor's children over the part or share of the trust fund from which they had received the income during their lives. That paragraph, in part, provided:

"* * * and if there be no surviving lawful child or children, or other lawful lineal descendants of the deceased child, and no appointment or designation by will or otherwise, the trust as to said share, or in case of a devise of only a portion, then as to any portion thereof not devised, shall remain and continue in force for the use and benefit of my surviving children or child."

None of the conditions first enumerated in this provision existed at the death of William H. Donner, Jr., so that the part or share of the trust fund enjoyed by him during his lifetime necessarily remained in trust for "the use and benefit of my (the donor's) surviving children or child." Joseph W. Donner was not within that class as he did not survive William H. Donner, Jr. No share of the interest of the latter could, therefore, pass under the deed of October 9th, 1929, by which Joseph W. Donner appointed his rights and interests in the fund in trust for life for the benefit of his children. It is likewise apparent that Joseph W. Donner's children were not within the designated class as the "Second" paragraph applies only to the surviving "children or child" of the donor of the fund.

My conclusion, therefore, is that on October 9th, 1929, the trust created by William H. Donner was located in this state; that the deed executed and delivered by Joseph W. Donner on that date was a valid exercise of the power of appointment vested in him by the terms of the trust deed of November 20th, 1920; that the appointment in trust for life for the benefit of Joseph W. Donner's children was a valid exercise of that power, and that no share of the interest of William H. Donner, Jr., passed under that deed, or otherwise, to Joseph W. Donner's children.

A decree will be entered in accordance with this opinion.

Note. On appeal, the decree entered in this cause was affirmed by the Supreme Court. (See 26 *Del. Ch.*, 24 *A.* 2d 309.)