BALTIMORE NATIONAL BANK, a Corporation of the United States of America, Successor Trustee,

*vs.*

CENTRAL PUBLIC UTILITY CORPORATION, a Corporation of the State of Delaware.

*New Castle, September 21, 1942.*

E. *Ennalls Berl,* of the firm of Southerland, Berl & Potter, and *James Piper* and R. Dorsey Watkins, of the firm of Piper, Watkins & Avirett, both of Baltimore, Md., for complainant.

*James R. Morford,* of the firm of Marvel & Morford, (*David B. Landis,* of the firm of Snider, Duke & Landis, of New York City, of counsel), for defendant.

THE CHANCELLOR: This is a bill to construe a trust indenture. The complainant, a national banking association, doing a general banking and trust business in the City of Baltimore, Maryland, is a successor trustee under an indenture, dated August 1st, 1932, executed by Central Public Utility Corporation, the defendant, to secure a twenty year 5½% income bond issue of $42,101,202.44. The latter corporation is a holding company organized in the State of Delaware, with its principal office and place of business in this State. Through stock ownership, it controls Consolidated Electric and Gas Company, likewise a holding company, organized under the *General Corporation Law* of the State of Delaware. Since the organization of Central Public Utility Corporation, its principal function and business has been to hold certain non-dividend paying stocks of Consolidated Electric and Gas Company. It also holds $208,500.00 principal amount of the bonds of that corporation. A certificate for 1,000,000 shares of the common stock of Central Public Utility Corporation, issued to the defendant, was endorsed in blank, and subsequently delivered to the com-

plainant, as successor trustee under the trust indenture. That stock certificate is the only trust *res* held by the trustee to secure the income bonds issued by the defendant. The annual gross income of Central Public Utility Corporation is approximately $12,000. The interest on its income bonds is payable only if earned, and is cumulative from August 1st, 1942. On August 1st, 1941, the accrued and unpaid interest thereon amounted to approximately $20,000,000. The present market value of the defendant's total assets is only about $800,000; while the income bonds and the unpaid interest thereon amount to a sum in excess of $62,000,000. The 1,000,000 shares of common stock, the endorsed certificate for which is held by the complainant as trustee, represent the whole of the common stock issue of Consolidated Electric and Gas Company. The income bonds issued by the defendant, and secured by the trust indenture, were primarily due in twenty years from their execution, or August 1st, 1952, but that instrument contains a so-called forfeiture or acceleration clause whereby, under certain contingencies, such bonds would become due and payable immediately. Among other things, Section 1 of Article VIII provides: "An event of default" occurs "if the company shall become insolvent." In that event, the complainant may "declare the principal of all bonds then outstanding * * * to be due and payable immediately."

No interest has ever been paid on the defendant's bonds, and, though not earned, is payable at their maturity, August 1st, 1952, or at some other date if the acceleration clause is applicable. Construing the above quoted provisions of the trust indenture to mean "insolvent" in the bankruptcy sense and when the corporate debts materially exceed the value of its assets, by letter to the defendant company dated December 3rd, 1941, the complainant trustee declared that an event of default had occurred and demanded payment of the whole of the bonded debt, secured by the indenture, together with all accrued and unpaid interest thereon. Cen-

tral Public Utility Corporation, the defendant, however, refused to concede its insolvency, within the meaning of the trust indenture; denied that any such event of default had occurred, or that the income bonds issued by it were immediately due and payable on demand made.

The important question to be determined under the defendant's demurrer to the bill is whether the complainant is a trustee under a Delaware trust, or whether the trust is located in the State of Maryland. That is a jurisdictional question of primary importance. If the situs of the trust is in Maryland, this court cannot instruct the trustee as to its administrative powers and duties under the deed. 1 *Beale Conflict of Laws*, § 102.2; 2 *Beale Conf. Laws*, §§ 297-297.2; *Restatement Conflict of Laws*, § 299; *Greenough v. Osgood*, 235 *Mass.* 235, 126 *N. E.* 461; *Schwartz v. Gerhardt*, 44 *Or.* 425, 75 *P.* 698. The trust *res* would then be regarded as being virtually in the custody and control of the courts of the State of Maryland, and the trustee would be compelled to account thereto for its proper administration. *Greenough v. Osgood, supra; Schwartz v. Gerhardt, supra;* see also *Bowles v. Dun-Bradstreet Corp.*, 25 Del. Ch. 32, 12 *A.* 2d 392. The complainant necessarily concedes this; but claims that it is a trustee under a Delaware trust, and that this court, therefore, has jurisdiction to construe the trust indenture. In that connection, it stresses the fact that the entire trust *res*, pledged by the defendant, consists of capital stock, issued by a Delaware corporation. It points out the practical convenience in holding that the trust is located in the state in which the defendant is organized, and in which process could be served on it in any proceeding taken by the trustee for the protection of the bondholders.

*Section* 2105 *of the Revised Code of* 1935 provides:

"For all purposes of title, action, attachments, garnishment and jurisdiction of all courts held in this State, but not for the purpose of taxation, the situs of the ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this Chapter or otherwise, shall be regarded as in this State."

But the location of personal property, delivered to and held by the trustee, is not necessarily the controlling question in determining the real situs of the trust. That is ordinarily a question of intent, in which other facts will also be considered.

The trust indenture was executed by the corporation in the State of Illinois and by the trustee in the State of Maryland. In principle, *Wilmington Trust Co. v. Wilmington Trust Co.*, 25 *Del. Ch.* 121, 15 *A.* 2d 153; *Id., post p.* —, 24 *A.* 2d 309, 312, 139 *A. L. R.* 1117, cannot be distinguished. It also involved the determination of the situs of a trust *inter vivos*. In considering that question, the Supreme Court said:

"* * * The place of one's residence no longer is a sure indication of one's place of business; nor is ownership of property closely tied to residence. The domicile of the donor is, of course, a circumstance to be considered in the ascertainment of the seat of the trust; but courts, today, are not so much inclined to the uncompromising pursuit of abstract doctrine. They are disposed to take the more realistic and practical view of the problem; and the donor's domicile is no longer regarded as the decisive factor. The place of execution of the trust instrument and the domicile of the beneficiaries are not important indicia. The domicile of the trustee and the place of administration of the trust—quite generally the same place—are important factors; and the intent of the donor, if that can be ascertained, has been increasingly emphasized."

The complainant is a successor trustee, but it appears that the original trustee was likewise a banking institution organized under the laws of the State of Maryland, and apparently doing business in the City of Baltimore. That is a strong indication that the trust was intended to be administered in that State. *Wilmington Trust Co. v. Wilmington Trust Co.*, 25 *Del. Ch.* 121, 15 *A.* 2d 153; 2 *Beale Conflict of Laws*, § 297.1. Moreover, the trust indenture contains the following pertinent provisions:

(1) Central Public Utility Corporation "will maintain an office or agency in the City of Baltimore, State of

Maryland, so long as any of the bonds are outstanding," where notices, presentations for payment and demands to and upon it, with respect to the indenture or the bonds, may be given or made. In harmony with this provision, the bonds expressly provide that they shall be payable at the "office or agency of the company in the City of Baltimore, State of Maryland."

(2) That notice of any sale, pursuant to the provisions of the indenture, shall state the time and place when and where it is to be made, shall contain a brief description of the securities and property to be sold, and shall briefly state the terms of the sale. This shall appear "in one daily newspaper published and of general circulation in the City of Baltimore, State of Maryland and in a like newspaper in the City of New York, State of New York."

(3) That the date of the execution by any person of a demand or request, or other instrument, may be proved by the certificate "of any notary public or other officer authorized to take acknowledgements of deeds to be recorded in the State of Maryland."

(4) That the trustee may resign by giving notice, in writing, to the company and notice to the bondholders by publication specifying a date when such resignation shall take effect, "which notice shall be published at least once a week for two (2) successive weeks prior to the date so specified, in one daily newspaper of general circulation published in the City of Baltimore, State of Maryland, and in a like newspaper in the City of New York, State of New York."

(5) That every successor trustee under the indenture shall always be a trust company or bank or national banking association having trust powers, in good standing, "with an office in the City of Baltimore, State of Maryland or in the City of New York, State of New York."

In view of all the facts alleged in the bill, or appearing in the exhibits attached thereto, it is difficult to escape the conclusion that the trust was intended to be administered in the State of Maryland, and that its situs is, therefore, in that State. The provisions in the deed, with respect to the State of New York, do not affect this conclusion, as there is nothing to indicate that the trust has any real connection with that State.

Questions of pleading are also raised, but need not be considered. The defendant company claims that no instructions are sought by the trustee and that no good reason for a construction of the trust deed, therefore, appears. Nor is it necessary to consider the defendant's motion to strike out certain allegations of the bill.

The defendant's demurrer to the complainant's bill is sustained, and an order will be entered accordingly.