Jodi Lynn Foster WALKER, Plaintiff,

v.

WEST MICHIGAN NATIONAL BANK & TRUST, Trustee, Henry T. Mather, Jr., Thomas A. Baither, Members of Advisory Committee of James R. Foster Trust for Jodi Lynn Foster Created November 4, 1988, and James R. Foster, Defendants.

No. CIV.03–794–SLR.

United States District Court, D. Delaware.

July 1, 2004.

Jeffrey M. Boyer, Esquire of Boyer & Katz, LLC, Wilmington, DE, for Plaintiff.

Peter S. Gordon, Esquire, Grover C. Brown, Esquire and Michael J. Maimone, Esquire of Gordon, Fournaris & Mammarella, P.A., Wilmington, DE, for Defendants. Scott Bieber, Esquire and David C. Blickenstaff, Esquire of Schiff Hardin LLP, Chicago, IL. Of Counsel.

**MEMORANDUM OPINION**

Sue L. ROBINSON, Chief Judge.

## I. INTRODUCTION

Plaintiff filed this civil action on August 8, 2003, asserting claims of breach of fiduciary duty against defendants West Michigan National Bank & Trust ("West Michigan"), Henry T. Mather, Jr., Thomas A. Baither, Members of the Advisory Committee of James R. Foster Trust for Jodi Lynn Foster Created November 4, 1988 ("the Advisory Committee"), and James R. Foster, seeking rescission of an irrevocable assignment of assets to a trust held by West Michigan. (D.I.1) Defendants have filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. (D.I.15) For the reasons stated below, the court will grant defendants' motion to dismiss.

## II. BACKGROUND

### A. The Cause of Action

The present action arises from a trust created on November 4, 1988 (the "1988 Trust") by defendant Foster, plaintiff's father. (D.I.1) In 1988, upon termination of a prior trust created by Foster on May 5, 1971 (the "1971 Trust"), plaintiff irrevocably transferred all of the assets she received from the 1971 Trust to the 1988 Trust, of which the Trustcorp Bank, Ohio was trustee.[1]

Plaintiff learned in 1988 that she held some interest in a Delaware property, then occupied by her sister. (D.I.20, ex. A) Due to her poor financial condition, plaintiff told her sister that she wished to live in the house with her sister and was entitled to such. Her sister refused and reportedly said that plaintiff should speak with their father, defendant Foster. Plaintiff contacted Foster in Montana and was told that the house was held by a trust and that if she insisted on moving in, the house would have to be sold leaving plaintiff's sister and her sister's child without a home. A month later, Foster contacted plaintiff and allegedly offered to "apply [plaintiff's] sister's share of the trust money to buy out [plaintiff's] interest in the house and then apply additional funds to purchase a new house for [plaintiff] to live in." (*Id.* at ¶ 7)

Plaintiff met with Foster on November 2, 1988. She states that he had a "large stack of papers that he said were related to the buy out." (*Id.* at ¶ 9) Plaintiff states that she was told that Foster would "put additional funds into a new trust for the purpose of making sure that there would

---

1. West Michigan is the successor trustee to Trustcorp Bank. (*Id.* at ¶ 2) The court relies upon the complaint for this description of the legal ramifications of the trust agreement, as plaintiff neglected to attach a copy to the complaint, despite language in the complaint to the contrary.

always be funds to pay for homeowner's insurance, property taxes and sewer charges." (*Id.*) Plaintiff signed the documents provided by Foster. She alleges that Foster "never explained to me the real contents of the document that I have since discovered to be an irrevocable assignment of rights." (*Id.* at ¶ 11) Allegedly, the documents provided for the transfer of all the assets of the 1971 Trust, which would have been distributed to plaintiff upon her 21st birthday, to the 1988 Trust. Plaintiff states that she had "no idea that the [1971 Trust] existed." Plaintiff does not presently reside in the house held by the 1988 Trust, but she does derives rental income from it. (D.I.20, ex. B)

Plaintiff alleges that she was wrongfully induced by misrepresentation and intimidation into agreeing to the transfer. (D.I. 1 at ¶ 6) Plaintiff alleges that she relied upon misrepresentations from Foster regarding the character of the assets to be transferred. (*Id.* at ¶ 8) Plaintiff further alleges that she was not informed of the tax consequences of the transfer and was not advised to seek independent legal advice. Plaintiff also alleges that West Michigan, through its federal and state tax filings, has caused plaintiff to incur substantial federal and state tax liability. (*Id.* at ¶ 21–22)

### B. Citizenship of the Parties

Plaintiff is a citizen of the State of Delaware. (*Id.* at ¶ 1) Foster is a citizen of the State of Montana. (*Id.*) West Michigan is a citizen of the State of Michigan. (*Id.*) Mather and Baither are alleged to be nonresidents of the State of Delaware. (*Id.*) Finally, the Advisory Committee, an apparent unincorporated association of whom Mather and Baither are presumed members, is likewise alleged to not be a citizen of the State of Delaware. (*Id.*)

### III. PERSONAL JURISDICTION

When a defendant moves the court pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving that the court may exercise personal jurisdiction over the defendant consistent with both the constitutional requirements of due process and the state's long arm statute. *See Mellon Bank (East) PSFS Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992). Where a nonresident moves to dismiss on the basis of lack of personal jurisdiction, the plaintiff can not rely upon the pleadings alone but must come forward with some evidentiary facts to support the conclusion that the court has jurisdiction over each of the defendants. *See Stranahan Gear Co., Inc. v. NL Industries, Inc.,* 800 F.2d 53, 58 (3d Cir.1986).

The Delaware long arm statute provides for the assertion of personal jurisdiction over nonresidents in the following circumstances:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within

the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c)(2003).

In the case at bar, plaintiff failed to allege any facts in the complaint or in her four amendments to the complaint which supported the assertion of personal jurisdiction over any of the defendants.[2] (D.I. 1; D.I. 7; D.I. 8; D.I. 9; D.I. 10) Attached to plaintiff's answering brief, however, is an affidavit attesting to the jurisdictional facts discussed below. (D.I.20, ex. A)

## A. James R. Foster

■ Plaintiff alleges that Foster is subject to § 3104(c)(3) of the Delaware Long Arm Statute. In her affidavit, plaintiff alleges that Foster was physically present in Delaware when he induced her into transferring the asserts of the 1971 Trust to the 1988 Trust. Assuming for purposes of Rule 12(b)(2) that a tort was committed in Delaware by Foster, plaintiff has alleged jurisdictional facts sufficient to support the conclusion that § 3104(c)(3) applies.

These facts also support the conclusion that the assertion of personal jurisdiction over Foster is consistent with traditional notions of justice and fair play. *See International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Specific jurisdiction arises where the facts giving rise to the cause of action occur within the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). By entering the State for the purpose of arranging the 1988 Trust transaction, Foster purposefully availed himself of the laws of Delaware

such that personal jurisdiction exists for claims arising from that transaction. Consequently, the court finds that it has personal jurisdiction over defendant Foster.

## B. West Michigan

Plaintiff argues that assertion of personal jurisdiction over West Michigan is proper either under § 3104(c)(2) or under § 3104(c)(3). Plaintiff contends that West Michigan "assisted [Foster] in carrying out his fraudulent actions and ... profited by [Foster's] actions." Alternatively, plaintiff alleges that West Michigan, by filing tax forms in connection with the 1988 Trust, has provided indirect tax services to plaintiff, a Delaware resident. The court finds that the assertion of personal jurisdiction over West Michigan would be improper under either basis.

Plaintiff's first basis for asserting personal jurisdiction is under § 3104(c)(3), which contemplates specific jurisdiction over a defendant committing a tort within the forum state. *See, e.g., Mobil Oil Corp. v. Advanced Envtl. Recycling Technologies, Inc.*, 833 F.Supp. 437 (D.Del.1993). Plaintiff contends that Foster was West Michigan's agent and, therefore, they are liable for torts committed while he was in Delaware. Plaintiff, however, provides no basis in law or fact for the assertion that Foster was West Michigan's agent; perhaps because no such facts exist. First, West Michigan was not the original trustee to the 1988 Trust nor a trustee to the 1971 Trust. Second, even if West Michigan were the original trustee, there is still no evidence that Foster was the agent of anyone. Consequently, § 3104(c)(3) does not provide for the assertion of personal jurisdiction over West Michigan.

---

**2.** The court notes that plaintiff has filed four "Amendment[s] to Complaint Pursuant to Superior Court Rule 4(h)." Not only do these amendments appear to amend the same paragraph, they are also not proper amendments under this court's rules.

In the alternative, plaintiff contends that West Michigan's tax filings adversely affect plaintiff's own tax liability, and that this is a basis for personal jurisdiction under § 3104(c)(2). Plaintiff's contention is without merit. The statute provides for jurisdiction over a party that "[c]ontracts to supply services or things in this State." 10 Del. C. § 3104(c)(2). First, mere beneficial interest in a trust is insufficient to assert personal jurisdiction over a nonresident trustee.[3] *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Further, plaintiff has not alleged the existence of a contract to supply services or things in this State. Instead, plaintiff, as grantor of the 1988 Trust, alleges that she is affected by the services that West Michigan provides to the 1988 Trust, the situs of which is not Delaware. The fact that the agreement was signed in Delaware or that a Delaware resident was party thereto, is sufficient to confer personal jurisdiction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Blue Ball Properties, Inc. v. McClain,* 658 F.Supp. 1310 (D.Del.1987). Moreover, plaintiff has not alleged that any of West Michigan's activities with respect to tax preparation occurred in Delaware. Mere effect on plaintiff's tax liability does not establish personal jurisdiction under § 3104(c)(2). If such were the case, then in whatever jurisdiction plaintiff lived, West Michigan, could be hauled into a foreign court of which it had no notice. This is not consistent with "traditional notions of fair play and substantial justice," *International Shoe,* 326 U.S. at 316, 66

S.Ct. 154, as such, the court is without jurisdiction over West Michigan.

## C. The Advisory Committee

Plaintiff has neither pled nor alleged facts to support the conclusion that this court has personal jurisdiction over defendants Baither, Mather and the Advisory Committee. These defendants are not alleged to have in any way purposely availed themselves of the forum state. They were not alleged to have committed any tort in the state. They are not alleged to have minimum contacts with the forum such that general jurisdiction might apply. Indeed, with respect to count 1 and count 2, nothing at all is alleged with respect to defendants Baither, Mather or the Advisory Committee, let alone jurisdictional facts. Hence, the assertion of personal jurisdiction over these defendants is not consistent with either the Delaware Long Arm Statute or principles of due process.

## IV. MOTION TO DISMISS

Foster moves the court to dismiss on the grounds that plaintiff's claims are time barred and that plaintiff has failed to state a claim upon which relief can be granted. Because the court finds that plaintiff has failed to state any discernible claim, the motion to dismiss shall be granted.

### A. Standard of Review

In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Re-*

---

**3.** A further jurisdictional and pleading defect is that the gravamen of plaintiff's action is a determination over the validity of the 1988 Trust; this action, therefore, requires the assertion of jurisdiction *in rem* over the trust res. *See Hanson,* 357 U.S. at 249–50, 78 S.Ct. 1228. A court sitting in Delaware, however, cannot assert jurisdiction over the corpus of a trust with a situs outside the State. *See, e.g., Baltimore Nat. Bank v. Central Public Utility Corp.,* 28 A.2d 244, 245 (1942). Even if the court were to find that it could assert personal jurisdiction over the trustee, the court finds its lacks jurisdiction over the trust res.

*sorts, Inc.*, 140 F.3d 478, 483 (3d Cir.1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The moving party has the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991).

## B. Absence of a Duty

In count 1, plaintiff alleges that Foster's conduct constitutes a breach of fiduciary duty. (D.I. 1 at ¶ 17) Glaringly absent from the complaint, affidavit and even responsive brief, are any allegations that Foster stood in a fiduciary relationship to plaintiff; this is fatal to plaintiff's claim. It is axiomatic that in the absence of a duty, no breach thereof can exist.

▪ Plaintiff attempts to salvage her claim by arguing that Foster made "purposeful misrepresentations." [4] (D.I. 20 at 25) To the extent that plaintiff's theory rests upon misrepresentations, however, they are misrepresentations by omission; namely, that Foster did not inform plaintiff of the holdings in the 1971 Trust when he persuaded her to transfer those assets to the 1988 Trust. To be liable on the basis of an omission, Foster would have to be under a duty to disclose. Rest. (2d) Torts § 551. In the present case, plaintiff has not alleged facts to support the existence of such a duty.

▪ Plaintiff also contends that the present action is brought under a theory of a constructive trust. A constructive trust is a remedy imposed when "a defendant's fraudulent, unfair or unconscionable conduct causes him to be unjustly enriched at the expense of another to whom he owed some duty." *Jackson Nat. Life Ins. Co. v. Kennedy,* 741 A.2d 377, 393–94 (Del.Ch. 1999). In the facts at bar, none of the elements for imposition of a constructive trust is present. Even if Foster had a duty, and even if his conduct amounted to actionable misrepresentations, plaintiff does not allege that Foster received any gains, ill gotten or otherwise, from the transfer of the 1971 Trust assets to the 1988 Trust assets. Consequently, the court finds that plaintiff has failed to state a claim against Foster.

## C. Statute of Limitations and Laches

▪ Under Delaware law, claims of fraud are subject to a three-year statute of limitations. 10 Del. C. § 8106. Plaintiff fails to allege the presence of facts suggesting the requisite concealment to toll the statute of limitations. Instead, plaintiff asserts that she just did not read the papers before she signed them. Plaintiff cannot claim she did not discover the fraud until 2003, if she did not read the documents before she affixed her signature. Consequently, there is no basis in law to toll the statute of limitations.

▪ To the extent plaintiff's claim sounds in equity and may not be subject to a statute of limitations, the court also finds that laches precludes the bringing of suit. *See Adams v. Jankouskas,* 452 A.2d 148, 157 (Del.1982) ("This doctrine is rooted in the maxim that equity aids the vigilant, not

**4.** To the extent the complaint suggests the presence of fraud, the pleadings would not withstand scrutiny under Fed.R.Civ.P. 9(b)'s requirements for pleading with particularity.

those who slumber on their rights."). In considering whether laches ought to apply, the court may take guidance from the statute of limitations as to the reasonableness of the delay but must consider the totality of the circumstances. *Hudak v. Procek*, 806 A.2d 140, 155 (Del.2002). In the case at bar, plaintiff by her own statement demonstrates that as early as 1988 she had sufficient facts within her possession to place her on notice of a potential claim. By her own statement, plaintiff became aware that she had some interest in a property in Delaware and pursued that interest, which eventually led to the transaction at issue. Plaintiff apparently signed the documents creating the 1988 Trust, without seeking to understand the effect thereof. Moreover, faced with the prospect of having a house provided for her at no cost to her, plaintiff neglected to ask from whence it came. A fifteen year delay under these circumstances cannot be characterized as vigilance.

## V. CONCLUSION

For the reasons discussed above, defendants' motion to dismiss is granted. An order consistent with this opinion shall issue.